UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| KEVIN CHRISTOPER HUGGETT,<br><br>              Plaintiff<br><br>v.<br><br>NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>              Defendant.<br>_____/ | Civil Action No.: 16-12955<br>Honorable John Corbett O'Meara<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 12, 16]**

Plaintiff Kevin Huggett appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying his application for disability insurance benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion [ECF No. 16] be **GRANTED**;

- Huggett's motion [ECF No. 12] be **DENIED**; and

- the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

I. **BACKGROUND**

A. **Huggett's Background and Disability Applications**

Born October 3, 1969, Huggett was 39 years old when he submitted his applications for disability benefits on February 6, 2014. [ECF No. 9-3, Tr. 76]. He has a high school education and past work experience as a satellite installer and a drywall laborer. [ECF No. 9-6, Tr. 195-96]. Huggett alleges a disability onset date of April 1, 2009, and that he is disabled by schizophrenia, depression, anxiety, and left leg pain. [ECF No. 9-3, Tr. 76].

After the Commissioner denied both disability applications initially, Huggett requested a hearing, which took place on May 15, 2015, during which he, his father and a vocational expert (VE) testified. [R. 9-2, Tr. 24-50]. In a July 29, 2015, written decision, the ALJ found Huggett to be not disabled. [*Id.*, Tr. 20]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Huggett timely filed for judicial review. [*Id.*, Tr. 1-4; ECF No. 1].

## B. The ALJ's Application of the Disability Framework Analysis

DIB and SSI are available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1] Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.
[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c).

considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Huggett was not disabled. At the first step, he found that Huggett had not engaged in substantial gainful activity since his alleged onset date. [ECF No. 9-2, Tr. 13]. At the second step, he found that Huggett had the severe impairments of "schizoaffective disorder, depression, anxiety, opiate dependence, and rhabdomyolysis – lower extremities." [*Id.*]. Next, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 13].

Between the third and fourth steps, the ALJ found that Huggett had

4

the RFC to perform light work[3] and "is limited to simple, routine, repetitive work tasks with no fast paced production requirements, involving only simple work related decision, and routine place changes. He should have no contact with the public and only occasional contact with supervisors and coworkers. He cannot work around unprotected heights or moving machinery." [ECF No. 9-2, Tr. 15]. At step four, the ALJ found that Huggett was unable to perform any past relevant work. [*Id.*, Tr. 18]. With the assistance of VE testimony, the ALJ determined at step five that Huggett could perform occupations such as dishwasher, housekeeper, and vehicle or equipment cleaner, and that those jobs existed in significant numbers in the economy, rendering a finding that he was not disabled. [*Id.*, Tr. 19].

## II. ANALYSIS

### A.

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b) and 416.967(b).

5

and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Huggett argues that the ALJ erred by failing to give controlling weight to the opinion of his treating physician, Violetta Galecka, M.D., and by failing to find Huggett fully credible. The Court disagrees and recommends that the ALJ's decision be affirmed.

**B.**

Huggett argues that the ALJ erred in failing to give controlling weight to the opinion of Dr. Galecka. The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 727-

6

29; *Rogers,* 486 F.3d at 242-43. "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723. In all cases, a treating physician's opinion is entitled to great deference. *Id.* An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so, in order to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). This procedural safeguard not only permits "meaningful appellate review," but also ensures that claimants "understand the disposition of their cases." *Rogers*, 486 F.2d at 242-43 (internal quotation marks and citation omitted). Courts will not hesitate to remand when the ALJ failed to articulate "good reasons" for not fully crediting the treating physician's opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004).

In May 2015, Dr. Galecka offered an opinion on Huggett's mental ability to do work-related activities arising out of his diagnosed

7

schizoaffective disorder, which her clinic had been treating him for since October 2012. [ECF No. 9-7, Tr. 398-399]. The form she filled out allowed her to choose from several categories of limitations. "Limited but satisfactory" meant that the claimant has noticeable difficulty no more than ten percent of the workday or work week. [*Id.*, Tr. 398]. Dr. Galecka opined that Huggett had a limited but satisfactory ability to remember work like procedures; carry out very short and simple instruction; ask simple questions or request assistance; respond appropriately to changes in a routine work setting; be aware of normal hazards and take appropriate precautions; carry out detailed instructions; set realistic goals or make plan independently of others; interact appropriately with the general public; maintain socially appropriate behavior; adhere to basic standards of neatness and cleanliness; and use public transportation. [*Id.*, Tr. 398-99].

Another category of limitations was "seriously limited," meaning that the claimant has noticeable difficulty from 11 to 20 percent of the workday or workweek. [*Id.*, Tr. 398]. According to Dr. Galecka, Huggett had a seriously limited ability to understand and remember very short and simple instructions; maintain attention for two hour segment; maintain regular attendance and be punctual within customary, usually strict tolerance; sustain an ordinary routine without special supervision; make simple work-

8

related decisions; perform at a consistent pace without an unreasonable number and length of rest periods; deal with normal work stress; understand and remember detailed instructions; travel to unfamiliar place. [*Id.*, Tr. 398-99]. The category of "unable to meet competitive standards" meant that the claimant has noticeable difficulty from 21 to 40 percent of the workday or workweek. Dr. Galecka found Huggett unable to meet competitive standards in only one area—completing a normal workday and workweek without interruptions from psychologically based symptoms. She found him to have an unlimited/very good ability to accept instructions and respond appropriately to criticism from supervisors, and get along with co-workers or peers without unduly distracting them or exhibiting behavior extremes. [*Id.*, Tr. 398]. Dr. Galecka stated:

> Kevin suffers from auditory hallucination during times of stress and 'chaotic,' busy times when around a lot of activity. He is currently under regular psychiatry with a number of psychotropic medications to control his symptomology. He has had levels of stability, but has had decompensations leading to psychiatric hospitalizations during stressful times.

[*Id.*, Tr. 399]. She opined that if employed, Huggett would be absent from work for more than four days per month. [*Id.*].

The ALJ afforded Dr. Galecka's opinion little weight, reasoning that her treatment records "show the claimant does well as long as he is on his medications and he even admitted to a lesser amount of hallucinations

9

while on medication." [ECF No. 9-2, Tr. 18]. Huggett argues that Dr. Galecka's opinion is entitled to controlling weight, but does not cite to the record or provide explanations in support of his argument. He simply details the treating physician rule and asserts in a conclusory manner that substantial evidence does not support the ALJ's decision to discount her medical opinion. [ECF No. 12, PageID 555-57]. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997) (citation and internal quotations omitted). And the Court's own review of the record renders a conclusion that the ALJ did not err in giving Dr. Galecka's opinion less than controlling weight.

Huggett reported to Dr. Galecka on various occasions that his conditions improved with medication. [ECF No. 9-7, Tr. 393, 374, 372, 364, 448, 469]. In March 2013, Dr. Galecka assessed a global assessment of

functioning (GAF) score of 55[4] in March 2013, indicating only moderate limitations. [ECF No. 9-8, Tr. 452]. In June 2013, Huggett reported "less to no auditory hallucinations since beginning Latuda." [*Id.*, Tr. 374]. In October 2013, he began experiencing severe hallucinations again, but by November his hallucinations had decreased after Dr. Galecka increased Latuda. [*Id.*, Tr. 366, 364]. In May 2014, Huggett again reported an improvement in auditory hallucinations due to an increase in Latuda. [ECF No. 9-8, Tr. 489]. By August 2014, he was taking Depakote, and doing better because of it; he only suffered occasional hallucinations, had improved sleep, and his mood was more stable. [ECF No. 9-7, 448]. Huggett's auditory hallucinations continued to decrease in November 2014. [*Id.*, Tr. 469]. As recently as February 2015, Huggett claimed that he had significant improvement with Zyprexa and denied auditory hallucinations for two weeks. [ECF No. 9-7, Tr. 458]. Dr. Galecka's opinion was also internally inconsistent. She found that Huggett was seriously limited in dealing with work stress, but at the same time found that he is limited, but

---

[4] "The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning." *Norris v. Comm'r of Soc. Sec.*, No. 11-5424, 461 F. App'x 433, 436 n.1 (6th Cir. 2012) (citations omitted).

11

satisfactory in dealing with stress of skilled or semiskilled work. [ECF No. 9-7, Tr. 398-99]. Substantial evidence thus supports the ALJ's decision to not give controlling weight to Dr. Galecka's opinion.

And even though the ALJ gave little weight to Dr. Galecka's opinion, he accounted for part of the opinion by limiting Huggett to "simple, routine, repetitive tasks with no fast paced production requirements, involving only simple work related decisions, and routine work place changes," to not contact with the public and to only occasional contact with supervisors and coworkers. [ECF No. 9-2, Tr. 15]. Huggett's challenge to the ALJ's treatment of Dr. Galecka's opinion is without merit.

## C.

Huggett challenges the ALJ's finding that he was not fully credible. Credibility determinations of witnesses are within the province of the ALJ and should not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). At the same time, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241. An ALJ must explain the bases of her credibility determination, and the reviewing court should not be left to speculate as to the grounds for the ALJ's decision. *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 261 (6th Cir. 2015). "[B]lanket assertions that the claimant is not believable will not pass

muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248. Here, the Court finds that the ALJ's credibility determination was supported by substantial evidence.

The ALJ found that Huggett's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." [ECF No. 9-2, Tr. 17]. Huggett argues that the ALJ's statement is conclusory and demonstrates that the ALJ failed to conduct a meaningful review. [ECF No. 12, PageID 558]. This argument is without merit.

The ALJ reasoned that Huggett's treatment was conservative and that his impairments were generally well controlled with his medication. [ECF No. 9-2, ECF No. 17]. The ALJ found that his testimony that he is unable to do activities because of his auditory hallucinations was inconsistent with his ability to perform part-time activity, and that Huggett's claims of totally disabling functions were at odds with his active lifestyle in his daily activities and the medical record, which indicated that he had the motivation and ability to work. [*Id.*, Tr. 17-18]. This reasoning is well supported by the record.

Huggett reported on various occasions between June 2013 and December 2013 that when able, he worked "odd jobs" to stay busy and get some extra money. [ECF No. 9-7, Tr. 370, 372, 362, 368]. His self-described daily activities included doing his own laundry, taking out the trash, driving himself, shopping, managing his money, and interacting with members of his family. [ECF No. 9-6, Tr. 215-17]. As noted above, there is substantial evidence in the record to support the ALJ's finding that Huggett's mental impairments were well controlled with his medication.

Huggett argues that the ALJ "downplay[ed] the long standing mental illness of Plaintiff and ignores the ebb and flow effect of this disease." [*Id.*, PageID 559]. This is not true. In reviewing the record, the ALJ acknowledged that the severity of Huggett's mental condition fluctuated. He highlighted that Huggett reported no hallucinations in July 2013, occasional hallucinations in August 2014, on and off hallucinations in October 2014, and a decrease in hallucinations in November 2014. [ECF No. 9-2, Tr. 16].

For these reasons, the Court finds no compelling reason to disturb the ALJ's credibility determination.

## III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motion [ECF No. 16] be **GRANTED**; that Huggett's motion [ECF No. 12] be **DENIED**; and the ALJ's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford<br>ELIZABETH A. STAFFORD<br>United States Magistrate Judge

Dated: July 31, 2017

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 31, 2017.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
